IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:06CR00002 |
| v. ) | **OPINION SETTING FORTH** |
| ) | **REASONS FOR SENTENCE** |
| RICKY ALLEN CHARLES, ) | |
| ) | By: James P. Jones |
| Defendant. ) | Chief United States District Judge |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Jimmie L. Hess, Jr., Abingdon, Virginia, for Defendant.*

For the reasons set forth in this opinion, I find it appropriate to sentence the defendant to a sentence below the advisory guideline range.

The defendant, Ricky Allen Charles, was convicted by a jury in this court of wilfully engaging in the business of dealing in firearms without a license, 18 U.S.C.A. § 922(a)(1))(A) (West 2000). After considering objections to the Presentence Investigation Report ("PSR") by the parties, I determined that Charles had a Total Offense Level of 16 under the Sentencing Guidelines, with a Criminal History Category of I, resulting in an advisory guideline range of 21 to 27 months imprisonment. I determined to sentence Charles to five months imprisonment, together with five months of home detention following imprisonment. Since this

sentence constitutes a variance from the Sentencing Guidelines, I set forth in this Opinion the reasons for the sentence.

I find the following facts as presented at trial and in the PSR concerning the defendant and his criminal conduct.

In the summer of 2005, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") decided to target certain flea markets in rural Southwest Virginia where large numbers of persons were buying, selling, and trading firearms. Charles is one of several persons prosecuted for engaging in the business of dealing in firearms without a license as a result of this effort.[1]

On July 13, 2005, an ATF agent working in an undercover capacity traveled to a flea market in Chilhowie, Virginia, and purchased from Charles a .22-caliber revolver. The agent observed that Charles had approximately 12 long guns and four handguns on display. The ATF undercover agent again traveled to the same flea market on July 20, 2005, and purchased a .22 revolver from Charles. Also on that date, a local undercover officer working with ATF purchased a .22 revolver from Charles. While purchasing that firearm, the agent observed that Charles had six long guns and two handguns on display.

---

[1] Of the three separate cases that recently went to jury trial in this court as a result of the investigation, all with similar facts, Charles and one other defendant were convicted and one defendant was acquitted.

On July 25, 2005, an undercover officer traveled to a Tazewell, Virginia, flea market and purchased a .22-caliber revolver from Charles. During that transaction, Charles stated to the officer that he remembered him from the flea market the prior week and that he gave repeat customers a discount. The officer also observed that Charles had two long guns and four handguns on display.

On October 24, 2005, law enforcement officers executed a search warrant at Charles' residence in Meadowview, Virginia. Seven firearms were removed from Charles' vehicle and 14 firearms were seized from a safe located in the master bedroom of the home. The defendant provided a statement to authorities that he had never applied for a federal firearms license and that he had sold "seven or eight" guns in the last year.

The defendant was charged with three counts of selling a firearm to a resident of another state, 18 U.S.C.A. § 922(a)(5) (West 2000) (Counts One through Three), as well as one count of engaging in the business of dealing in firearms without a license (Count Four). He pleaded not guilty and at trial the jury acquitted him of all counts except Count Four. Following the jury's guilty verdict as to that count, the jury returned a special verdict directing that five of the 21 firearms seized by the government from his vehicle and residence be forfeited because they were involved in the offense.

Charles is 43 years old, with a 10th grade education. He was employed as a underground coal miner until 1991, when he was seriously injured in a mining accident. He has since been receiving disability payments. Charles has been married since 1988 and has two children. None of his family have any criminal history.

Because of his on-the-job injury, Charles was prescribed pain medication. In 1995 he was convicted in state court of altering one of his prescriptions to increase the number of pills for one month from 15 to 25, but was placed on probation. His civil rights, including his right to possess firearms, were restored in 2004.

At trial, Charles testified and did not dispute the firearms sales. He asserted that he was not in the business of dealing in firearms, but traded guns as a hobby and as a collector.

While the Sentencing Guidelines are now not mandatory, *United States v. Booker*, 543 U.S. 220, 226-27 (2005), I am obligated to "consult those Guidelines and take them into account," along with the sentencing goals set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2004). *Id.* at 264. The Fourth Circuit has mandated the following process that a district court in this circuit must follow in order to comply with *Booker*:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range serves the factors

> forth in § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law . . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. The district court need not discuss each factor set forth in § 3553(a) in checklist fashion; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.

*United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006) (alterations, internal quotation marks, and citations omitted).

Under § 3553(a), I must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

> the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C.A. § 3553(a). The further a sentence "diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Moreland*, 437 F.3d at 434. Nevertheless, "a district court's mandate is to impose a sentence

-5-

Case 1:06-cr-00002-JPJ-PMS    Document 46    Filed 08/21/06    Page 5 of 7    Pageid#: 106

sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006) (citation omitted).

In this case, the relevant statutory factors convince me to impose a sentence below the guideline range.

The defendant has been generally law-abiding, without a history of violence. His one conviction of several years ago, related to his pain-producing injury, was handled leniently by the state courts and he has not repeated this offense. He has a stable life, with a family that is highly financially dependent upon him. He will likely lose his Social Security disability payments during the period of his incarceration and if that term is lengthy, it is probable that his family will lose its home. He is now burdened with a felony conviction that will prevent him from possessing or collecting guns, an important part of his life.

There is nothing egregious about the facts of Charles' offense. Indeed, it is likely that there were many other individuals similarly violating the law at the flea markets and it was happenstance and his bad luck that he was targeted by the ATF.[2]

---

[2] As the jury here was instructed without objection, there is no bright line test under the law to determine the difference between a person who is dealing in firearms as a business and a person who makes occasional sales for a hobby or for a personal collection. "There is no specific number of transactions in firearms which would automatically determine that a person was 'engaged in the business of' firearms." (Instruction No. 9.) In its special verdict as to forfeiture, the jury found that most of the guns found at Charles' residence were not involved in the business of dealing in firearms.

As a matter of policy, no doubt, the ATF did not warn Charles that he might be in violation of law before making undercover purchases from him. Under all of the circumstances, I find that Charles' conviction and punishment will be sufficient both to insure that he does not violate the law again and to deter others from similar conduct.

For these reasons, I find it appropriate to sentence Charles to a sentence below the advisory guideline range.[3]

DATED: August 21, 2006

/s/ JAMES P. JONES
Chief United States District Judge

---

[3] Charles' guideline range is increased because four offense levels were added since more than seven firearms were involved. *See U.S. Sentencing Guidelines Manual* ("USSG") § 2K2.1(b)(1)(B) (2005). This guideline provision applies to all firearms offenses but it has particular impact in the dealing without a license offense, where a necessary element of the crime is the repetitive purchase and resale of firearms. In Charles' case, I think it more appropriate to sentence him as if he had a guideline range without the increase for the number of firearms. The Base Offense Level is 12, with a range permitting a sentence of five months imprisonment, followed by five months home detention. *See* USSG §§ 2K2.1(a)(7); 5C1.1(d).

-7-

Case 1:06-cr-00002-JPJ-PMS   Document 46   Filed 08/21/06   Page 7 of 7   Pageid#: 108